IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY MARSHALL #183459
        Plaintiff          :

        v.                     :   CIVIL ACTION NO. RWT-11-2755

RONALD S. WEBER, et al.   :
        Defendants

**MEMORANDUM OPINION**

**Procedural History**

On September 22, 2011, Plaintiff Gregory Marshall, presently confined at the Western Correctional Institution in Cumberland ("WCI"), filed a civil rights Complaint seeking injunctive relief mandating his transfer to another facility for mental health treatment.[1] Although Plaintiff is barred generally from civil filings under the "three strikes" provisions of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), the undersigned permitted the case to proceed with regard to his assertion that he was experiencing a deterioration of his mental health and felt suicidal.[2] In his Complaint, Plaintiff referenced a March 18, 2011 incident wherein he swallowed razor blades and a May 24, 2011 incident wherein he bit his tongue during a panic attack, and states he was not provided mental health treatment in the days prior to and after these events. ECF No. 1 at 6-8. He further claims that Defendant Weber, a prison psychologist, has determined that he does not require mental health treatment. *Id.* at 17-18. In a subsequent pleading, Plaintiff states that

---

[1] Plaintiff's Complaint contains a request for jury trial. For reasons apparent herein, the request for jury trial as well as Plaintiff's request for a hearing (contained in ECF No. 55) are denied.

[2] Plaintiff did not indicate how Gary D. Maynard, Secretary for the Division of Correction; Scott Oakley of the Inmate Grievance Office; and the Honorable J. Frederick Motz and Catherine C. Blake, members of this bench, were involved in the alleged recent denial of mental health treatment. For that reason, they were dismissed from this lawsuit by order dated October 21, 2011. ECF No. 3, n. 1.

in lieu of mental health treatment, he has been subjected to a "Behavioral Management Plan." ECF No. 10 at 17.

Defendant Ava Joubert, M.D., WCI's Medical Director, has responded to the Complaint (ECF No. 6). Her response, which contains exhibits, including medical records, shall be construed as a motion for summary judgment. WCI Warden J. Phillip Morgan, and WCI Mental Health Counselor Ronald S. Weber have filed a dispositive motion (ECF No. 50) which shall be treated as a motion for summary judgment. Plaintiff has filed cross-motions for summary judgment (ECF Nos. 52 and 55) and numerous pleadings opposing Defendants' dispositive motions[3] (ECF Nos. 48, 49, 52 and 55). Several non-dispositive motions also remain. No hearing is required to resolve the issues presented in this case. *See* Local Rule 105.6. (D. Md. 2011).

## Non-Dispositive Matters

The court shall first address Plaintiff's requests for appointment of counsel contained in ECF Nos. 48 and 55. A federal judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1)[4] is discretionary, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.* Upon careful consideration of the motions and previous filings by Plaintiff, the court finds that he has demonstrated the wherewithal to either articulate the legal

---

[3] Plaintiff asks that his pending motions (ECF Nos. 48, 49 and 52) be construed as opposition motions. ECF No. 54. The court shall grant the request and consider Plaintiff's motions as opposition responses.

[4] Under § 1915(e)(1), a court of the United States may request an attorney to represent any person unable to afford counsel.

and factual basis of his claims himself or secure meaningful assistance in doing so.[5] The issues pending before the court are not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1).

Contained within Plaintiff's Motion for Summary Judgment (ECF No. 55) is a "request for more definite statement." Having read the pleading, the court assumes Plaintiff is seeking documentation that he has been diagnosed him with Borderline Personality Disorder ("BPD").[6] Plaintiff's request, in reality a request for discovery, comes in response to Defendant Weber's Declaration referencing that Plaintiff "displays symptoms congruent with Borderline Personality Disorder." ECF No. 50, Ex. 1, Declaration of Ronald S. Weber, Mental Health Professional Counselor Supervisor. The court does not read Weber's statement as an assertion that Plaintiff has actually been diagnosed with BPD, merely that he displays symptoms that might suggest BPD exists. In any event, Plaintiff's mental health diagnosis is not at issue in this case; instead, the focus is on whether Plaintiff, who was placed on a Behavior Management Plan in 2007,[7] was denied mental health care during the first five months of 2011. The request shall be denied.

Plaintiff's requests for emergency injunctive and mandamus relief compelling his immediate transfer to Patuxent Institution or Clifton T. Perkins Hospital (ECF Nos. 48, 49 and 55) shall be denied. Entitlement to such care involves the underlying issue raised in the

---

[5] It appears that Plaintiff obtains legal assistance from fellow prisoner Earl Right. ECF No. 1 at 1.

[6] Plaintiff does not dispute a long-held diagnosis, referenced in medical records provided by Defendant Joubert, indicating that he suffers from schizophrenia.

[7] In *Marshall v. Friend, et al.,* Civil Action No. CCB-09-2269 (D. Md.), the Honorable Catherine C. Blake examined Plaintiff's claim that he was denied psychological treatment and instead placed on a Behavioral Management Plan. In that case, as here, Plaintiff sought transfer from WCI to another facility for mental health evaluation and treatment. After exhaustive briefing, the court concluded that the BMP was simply an attempt to gain Plaintiff's compliance with behavior expected of all DOC prisoners and was not intended or used to replace treatment and evaluation by mental health care professionals, but rather supplement such treatment. The court further found that the plan was supervised in part by a mental health care professional. *Id.,* Memorandum of June 15, 2010, ECF No. 33.

Complaint and shall be addressed in the context of the pending dispositive motions.

In his Complaint, Plaintiff referenced a March 18, 2011 incident wherein he swallowed razor blades and a May 24, 2011 incident wherein he bit his tongue during a panic attack, and states he was not provided mental health treatment after these events. ECF No. 1 at 6-8. He further claims that Defendant Weber, a prison psychologist, has determined that he does not require mental health treatment. *Id.* at 17-18. In a subsequent pleading, Plaintiff states that in lieu of mental health treatment, he has been subject to a "Behavioral Management Plan." ECF No. 10 at 17.

Having resolved the pending non-dispositive matters, the court now turns to the parties' motions for summary judgment and oppositions thereto.

**Standard of Review**

<u>Motion for Summary Judgment</u>

Defendant Joubert's response, together with supporting exhibits, is dispositive of the injunctive relief requested in the Complaint, and as such implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger*, 510 F.3d at 450. However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).[8]

---

[8] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing

---

obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

affidavit requirement of former Rule 56(f)).[9]

Plaintiff has not filed an affidavit under Rule 56(d).[10] Moreover, the court is satisfied that it is appropriate to address Defendant Joubert's response as one for summary judgment.

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

---

[9] Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

[10] If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Discussion

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When prison officials show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id*. at 104. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990). Prison officials are entitled to rely on medical judgments and expertise of prison physicians and medical personnel concerning the course of treatment deemed necessary for prisoners. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier* 896 F.2d at 854–55 (stating that supervisory prison officials are entitled to rely on professional judgment of

trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).

A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994).  Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).  Mere negligence or malpractice does not rise to a constitutional level. *See Miltier v. Born,* 896 F.2d 848 (1990).

The Constitution may entitle a prisoner to psychiatric or psychological treatment if a "physician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or denial of care would be substantial." *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977).  The right is limited to care which can be provided on a reasonable cost and time basis. *Id*. at 48.

Two days prior to his Wicomico County court appearance Plaintiff was seen by Physicians' Assistant ("PA") Lisa Schindler for complaints of pain in the left lower leg and the need to receive replacement contact lenses and earplugs. ECF No. 6 at Ex. 1 p 1. Plaintiff did not express any mental health concerns to PA Schindler.  Plaintiff was hospitalized at Bon Secours Hospital after swallowing a razor blade.  While there he was seen in the surgery and psychiatry departments and given risperidone, a medication used to treat schizophrenia.[11]  Upon return to the WCI Infirmary, he indicated he felt fine, complained about placement in a double

---

[11] *See* http://www.rxlist.com/risperdal-drug.htm.

cell, and indicated he would be filing a lawsuit against health care providers. *Id.* at Ex. 1, p. 2. Plaintiff remained in the Infirmary until March 29, 2011, where he was x-rayed to detect whether the razor blade remained in his body, and provided medications for his mental condition and pain. *Id.* at Ex. 1, pp. 3-4. Plaintiff was taken to Jessup Correctional Institution for an offsite visit on April 8, 2011. There, he told Registered Nurse Practitioner Lum Maximuangu he felt suicidal after his mother died, but was no longer suicidal. Despite this statement, Plaintiff was placed in a suicide smock and closely observed, upon order of Dr. Temesgen and Psychiatrist Dr. Syed. Additional mental health assessment was made by Lynda M. Bonieskie, PhD. Plaintiff remained at JCI for three days before transfer back to WCI. *Id*. at Ex. 1, pp. 5-8. There, Dr. Reed recommended Plaintiff return to his regular housing unit "so as not to encourage further acting out." Treatment continued with risperidone and neurontin. *Id*. at Ex. 1, p. 8.

Plaintiff swallowed additional razor blades while in his cell on May 23, 2011, and was admitted to the WCI Infirmary, where he remained for three days. Medical staff determined that Plaintiff was not eligible for transfer to Patuxent or Perkins, and that adequate mental health treatment could be provided at WCI. *Id.,* at Ex. 1, pp. 10-11. Plaintiff repeated this behavior, swallowing a razor blade on July 28, 2011, and was admitted to the JCI Infirmary. Clinical providers, behavioral health providers, and nursing and custody staff met with Dr. Joubert on July 29, 2011. Staff determined that overall, Plaintiff's behavior was better than it had been in many years, and attributed the improvement to the Behavioral Management Plan in effect since December of 2010. A recommendation was made that Dr. Shelhase, a psychiatrist, evaluate Plaintiff. Because Plaintiff tended to act out when going out on trips, staff recommended that future court appearances be by teleconference and medical trips occur only in emergencies. *Id.* at Ex. 1, pp. 12-14.

Plaintiff was seen by Nurse Practitioner Deirdre Mull on October 3, 2011, for complaints of bilateral headache pain at the temple which Plaintiff attributed to depression. He expressed no need for mental health services but was encouraged to see mental health staff if his depression worsened. Other complaints of a medical nature also were discussed at this visit. *Id.* at Ex. 1, pp. 15-17.

It is clear that Plaintiff cannot support his claim that he is not receiving any mental health services; rather, he is not receiving the services he desires. In the absence of any evidence that transfer to a mental health facility is necessary and/or that the services being provided are not effective, this disagreement regarding Plaintiff's ongoing care does not rise to a constitutional level. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Bowring*, 551 F.2d at 48. Even when viewed in the light most favorable to him, Plaintiff's allegations, set forth in his Complaint and numerous opposition pleadings, fail to amount to show deliberate indifference. A prisoner may disagree with his treatment or the treatment might be negligent, but deliberate indifference demands more. Here, the verified and undisputed records show that Plaintiff, who was assigned a Behavioral Management Plan five years ago, has been seen by medical and mental health care providers when appropriate, and has been prescribed medication and other courses of treatment for his mental health concerns. His disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Accordingly, Defendants are entitled to summary judgment. A separate Order follows.

Date: <u>December 17, 2012</u>                         /s/
                                                    ROGER W. TITUS
                                         UNITED STATES DISTRICT JUDGE